UNITED STATES DISTRICT COURT
DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| HOLGER NOREKE,<br><br>Plaintiff<br><br>v.<br><br>GIDEON TAYLOR CONSULTING, LLC and PAUL TAYLOR,<br><br>Defendants. | Case No. 23-cv-11161-DJC |

## MEMORANDUM AND ORDER

**CASPER, J.**                                                                                              **August 14, 2025**

### I.   Introduction

Plaintiff Holger Noreke ("Plaintiff") has filed this lawsuit against Defendants Gideon Taylor Consulting ("GTC" or the "Company") and Paul Taylor, GTC's President and Chief Executive Officer ("CEO"), (collectively, "Defendants") and asserted several claims. D. 1-1. Defendants have moved for partial summary judgment as to Count I, which alleges a violation of the Massachusetts Wage Act, Mass. Gen. L. c. 149, § 148. D. 105. For the reasons stated below, the Court ALLOWS the motion.

### II.   Standard of Review

The Court grants summary judgment where there is no genuine dispute as to any material fact and the undisputed facts demonstrate that the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a). "A fact is material if it carries with it the potential to affect the

1

outcome of the suit under the applicable law." Santiago–Ramos v. Centennial P.R. Wireless Corp., 217 F.3d 46, 52 (1st Cir. 2000) (internal citation and quotation marks omitted). The movant bears the burden of demonstrating the absence of a genuine issue of material fact. Carmona v. Toledo, 215 F.3d 124, 132 (1st Cir. 2000); see Celotex v. Catrett, 477 U.S. 317, 323 (1986). If the movant meets its burden, the non-moving party may not rest on the allegations or denials in its pleadings, Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 256 (1986), but must come forward with specific admissible facts showing that there is a genuine issue for trial. Borges ex rel. S.M.B.W. v. Serrano–Isern, 605 F.3d 1, 5 (1st Cir. 2010). The Court "view[s] the record in the light most favorable to the nonmovant, drawing reasonable inferences in his favor." Noonan v. Staples, Inc., 556 F.3d 20, 25 (1st Cir. 2009). "When deciding cross-motions for summary judgment, the court must consider each motion separately, drawing inferences against each movant in turn." Reich v. John Alden Life Ins. Co., 126 F.3d 1, 6 (1st Cir. 1997) (citation omitted).

**III.    Factual Background**

GTC, founded in 2001 by Taylor, provides business process automation services and sells related software products. D. 106 ¶ 1; D. 114 ¶ 1. GTC's products include an eForms/ePath solution automation tool and an AI-driven chatbot related to Oracle's Peoplesoft software applications. D. 106 ¶ 5; D. 114 ¶ 5. GTC has three separate divisions: oGT, Intrasee and Newbury. D. 106 ¶ 3; D. 114 ¶ 3. oGT was GTC's original legacy business, and Intrasee and Newbury were formerly independent entities that GTC acquired and then incorporated as divisions. D. 106 ¶ 3; D. 114 ¶ 3. Many GTC employees are assigned to a specific division, while others work at the enterprise-level, including members of the Executive Team, administrative assistants, a commissioned sales team, marketing teams, a senior human resources representative and an accounting department. D. 106 ¶ 4; D. 114 ¶ 4. The Newbury Division provides general

Peoplesoft consulting services and re-sells a product called UiPath, while the Intrasee Division focuses on selling GTC's chatbox, UX and UI products. D. 106 ¶¶ 6-7; D. 114 ¶¶ 6-7. The Newbury Division was GTC's largest division, accounting for approximately 60% of GTC's gross revenue. D. 114 ¶ 60.[1]

Noreke worked as an independent contractor for Newbury prior to GTC's acquisition of Newbury and then continued as an independent contractor for GTC following that acquisition. D. 106 ¶ 8; D. 114 ¶ 8. On June 16, 2022, GTC offered Noreke the position of Managing Director of GTC's Newbury Enterprise Services Division, and on June 17, 2022, Noreke accepted the position. D. 106 ¶¶ 11-12; D. 114 ¶¶ 11-12. Noreke's compensation was to include a base salary of $200,000, plus what was referred to as an annual "commission," to be determined based upon a plan set by the Executive Team (the "Commission Plan"). D. 106 ¶ 13; D. 114 ¶ 13; D. 1-1 at 36-41; see D. 106 ¶ 10; D. 114 ¶ 10. According to the "Commission Plan," Noreke's additional compensation was tied to the Newbury Division's Divisional Net Income ("Div NI"), "calculated as division sales minus cost of goods sold and expenses on the basis of accounting elected by management consistently applied." D. 106 ¶ 15; D. 114 ¶ 15. Newbury's quarterly Div NI target was $350,000. D. 106 ¶ 22; D. 114 ¶ 22. Newbury's performance relative to the Div NI target determined Noreke's additional compensation. D. 106 ¶ 24; D. 114 ¶ 24. Specifically, if Newbury earned less than 50% of its Div NI target, Noreke was not entitled to additional compensation; if Newbury earned 50-75% of this target, it triggered a $25,000.00 payment to Noreke; if Newbury

---

[1] Defendants do not dispute Noreke's statement of additional facts, D. 114 ¶¶ 42-88, and instead suggests they are not material to the question of whether Noreke's additional compensation payments were commissions protected by the Wage Act. D. 117 at 1-2. Noreke's statement of additional facts is, therefore, deemed admitted, See Stonkus v. City of Brockton Sch. Dep't, 322 F.3d 97, 102 (1st Cir. 2003), but the Court agrees they are not material to the core issue here.

earned 75%-100% of this target; it triggered a $37,500.00 payment to Noreke; if Newbury earned 100-150% of this target; it triggered a $50,000.00 payment to Noreke; if Newbury earned 150-200% of this target, it triggered a $75,000.00 payment to Noreke and if Newbury earned over 200% of this target, it triggered a $100,000.00 payment to Noreke.  D. 106 ¶ 24; D. 114 ¶ 24.

This calculation incorporated sales and debits based upon the performance of GTC's other divisions.  D. 106 ¶ 26; D. 114 ¶ 26.  Specifically, division sales included "gross profit sharings from the sale of other division's [sic] products and services sold primarily by Newbury," "cross-divisional credits" and "cross-divisional debits" and was "reduced by gross profit sharings from the sale of Newbury products and services sold primarily by other divisions."  D. 106 ¶ 15; D. 114 ¶¶ 13, 15; D. 107-8.  Noreke could earn this additional compensation even if GTC incurred a net loss.  See D. 114 ¶ 55.  Defendants represented that these payments were not "discretionary" and stated that GTC was "committed to paying [Noreke] based on the terms outlined."  D. 114 ¶ 46; see D. 115-1 at 25; D. 115-2 at 1-19; D. 115-5 at 19-21; see D. 114 ¶ 79.  Noreke was the only GTC employee within the Newbury Division whose compensation was to include such annual "commissions."  D. 114 ¶ 42.

As Managing Director, Noreke was a member of GTC's senior management team, reported directly to the Executive Committee and supervised several employees, five or six W2 consultants and approximately fifty independent contractor consultants who would be staffed on client projects.  D. 106 ¶¶ 30, 32; D. 114 ¶¶ 30, 32.  The Company's job description noted that Managing Director would "control and oversee all business operations, people, and ventures within the division" and would "directly influence the overall success of the Newbury brand, divisional revenue, and services delivery."  D. 114 ¶ 62.  Noreke's duties were consistent with those set forth in his job description, although Noreke has testified that they were "a little bit heavier on the sales

4

and client satisfaction" than the job description suggests. D. 106 ¶ 33; D. 114 ¶ 33; D. 107-3 at 24-29. Noreke's duties included developing strategic plans in coordination with the Executive Team, hiring Newbury employees, including a recruiter for independent contractor consultants, an engagement manager to work directly with clients, managing employees and independent contractors, overseeing the division's work and growing the Newbury Division's revenue and overall profitability. D. 106 ¶ 34; D. 114 ¶ 34.

Newbury's "cost of goods sold" was one of the metrics the Company used to determine the division's financial performance. D. 106 ¶ 36; D. 114 ¶ 36. The cost of goods sold, in turn, depended in part upon the rates billed for other employees in the division. D. 106 ¶ 37; D. 114 ¶ 37. Noreke's additional compensation payments were calculated on a quarterly basis. D. 106 ¶ 38; D. 114 ¶ 38. During Noreke's terms as Managing Director of Newbury, he received a $75,000 additional compensation payment in Q3 2022, no additional compensation payment for Q4 2022 and a $50,000 additional compensation payment for Q1 2023. D. 106 ¶ 39; D. 114 ¶ 39 (disputing only the use of the term "additional compensation payment" as opposed to "commission").

GTC terminated Noreke on April 17, 2023. D. 106 ¶ 40; D. 114 ¶ 40. This action occurred after Noreke noted his concern that the Company had misallocated expenses attributable to the oGT and Intrasee divisions to the Newbury Division and thereby reduced Noreke's commissions. D. 114 ¶ 74; see D. 114 ¶¶ 75-87. Taylor cited his "refusal to accept the compensation plan" and his "irreconcilable expectations concerning his compensations" as reason for the termination. D. 114 ¶ 88.

**IV.    Procedural History**

Noreke instituted this action in Plymouth Superior Court on May 2, 2023. D. 1-1. Defendants removed this action to this Court on May 24, 2023. D. 1. Defendants now have moved for partial summary judgment only as to Count I, the Wage Act Claim. D. 105. The Court heard the parties on the pending motion and took this matter under advisement. D. 120.

**V.    Analysis**

"The Wage Act requires prompt payment of 'wages earned' on pain of civil and criminal penalties, treble damages, and attorney's fees." Weiss v. DHL Express, Inc., 718 F.3d 39, 47 (1st Cir. 2013). To state a claim under the Massachusetts Wage Act, Mass. Gen. L. c. 149 § 148, a plaintiff "must prove (1) he was an employee under the statute; (2) his deferred compensation constitutes a 'wage' under the statute; [and] (3) the defendants violated the Act by not paying him his wages in a timely manner." Roma v. Raito, Inc., No. 1:13-cv-10297-LTS, 2015 WL 1523098, at *6 (D. Mass. Mar. 31, 2015) (quoting Doucot v. IDS Scheer, Inc., 734 F. Supp. 2d 172, 192 (D. Mass. 2010) (further citation omitted). The only issue before the Court is whether the compensation Noreke alleges was due pursuant to the Commission Plan is a "wage" under Mass. Gen. L. c. 149, § 148. See D. 108 at 9-15.

"While the [Wage] Act makes clear on its face holiday pay, vacation pay, and definitely determined commissions fall within its protections, the term 'wages' is not otherwise defined." Weiss, 718 F.3d at 47. Massachusetts courts look to the purpose of the Act—to prevent the unreasonable detention of wages—and have refused to adopt a broad definition of "wages." Id. (summarizing Massachusetts' caselaw defining "wages" under the Wage Act). "[B]ecause the Wage Act carries criminal penalties, see § 27C, courts have been reluctant to extend its reach

6

beyond the wages, salary, holiday pay, vacation pay, and definitely determined commissions which the statute expressly mentions." Roma, 2015 WL 1523098, at *7.

"The term 'commission' is commonly understood to refer to compensation owed to those in the business of selling goods, services, or real estate, set typically as a percentage of the sales price." Suominen v. Goodman Indus. Equities Mgmt. Grp., LLC, 78 Mass. App. Ct. 723, 738 (2011). "Courts have uniformly held that 'a profit-sharing arrangement' or 'a share of the overall profits generated by [] development efforts' is not a commission covered by the Wage Act." Mehra v. Boston Globe Media Partners, LLC, No. 23-cv-1483-BLS1, at 5 (Mass. Super. Ct. Jan. 31, 2024) (alteration in original) (quoting Suominen, 78 Mass. App. Ct. at 738). Under the Wage Act, "a commission must be based on the sales or revenue generated by the individual employee, as distinguished from a payment based on a percentage of the business's overall profits, which is not a commission." Israel v. Voya Institutional Plan Servs., LLC, No. 15-cv-11914, 2017 WL 1026416, at *4 (D. Mass. Mar. 16, 2017).

As an initial matter, the Court notes that GTC's reference to this compensation as a "commission" is not dispositive: "the nature and purpose of a particular form of remuneration, not the label applied to it by the employer, determines whether it is covered by the statute." Berberian v. G-Form, LLC, No. 14-cv-10422-JCB, 2014 WL 12700578, at *6 (D. Mass. Aug. 29, 2014) (citing Weems v. Citigroup Inc., 453 Mass. 147, 153 (2009).

Noreke urges that this rule does not apply because the payments were dependent upon the Newbury Division's profitability rather than the profitability of the Company as a whole. D. 113 at 14-17. Multiple courts, however, have concluded that payments dependent upon the profits of a subpart of a company are not subject to the Wage Act. See Suominen, 78 Mass. App. Ct. at 724-26, 737-38 (concluding that "promote" payments, proportions of the profits on specific projects

7

under a construction manager's control are not commissions under the Wage Act); Dwyer v. Blue Sea Prods., LLC, No. 18cv-15182-ES-MAH, 2020 WL 1441616, at *4 (D.N.J. Mar. 23, 2020) (concluding that profit sharing from a company's New England division was not subject to the Wage Act). In a similar vein, Noreke posits that the additional compensation was the byproduct of his own performance, D. 113 at 19-20, but that is sometimes the case with profit sharing arrangements. For example, the payments at issue in Suominen, 78 Mass. App. Ct. at 738, were "a share of the overall profits generated by the development efforts," including those by plaintiff, but the Court nonetheless concluded they were not wages under the Wage Act, id.

Noreke argues his payments are "commissions" under the Wage Act because they are "arithmetically determinable," and Defendants did not have discretion regarding whether to make these payments to Noreke. D. 113 at 12-13, 17-19. But a payment that is "arithmetically determinable" and non-discretionary is not a commission under the Wage Act if it is nonetheless tied to a company's profits. Roma, 2015 WL 1523098, at *7 (declining to conclude that payments that were "mandatory and arithmetically calculable" were subject to the Wage Act because they were "a share of the overall profits generated by the development efforts" rather than "compensation owed to those in the business of selling goods, services, or real estate, set typically as a percentage of the sales price"); Suominen, 78 Mass. App. Ct. at 737-38 (declining to consider whether payments owed were "arithmetically determinable" because they were not otherwise "'commissions' within the meaning of the Wage Act"); Barnia v. Kaur, 646 F. Supp. 3d 154, 169 (D. Mass. 2022) (concluding that a "50% nondiscretionary profits-based management bonus" was not subject to the Wage Act and noting that a "profit-based bonus can . . . only be understood as contingent").

The cases Noreke relies upon to suggest these payments were "commissions" within the meaning of the Wage Act are distinguishable because they involve payments directly attributed to the plaintiffs' individual revenue-generating efforts, rather than a division-wide profitability metric. D. 117 at 8; see D. 113 at 15 (citing Ellicott v. Am. Cap. Energy, Inc., 906 F.3d 164, 166 (1st Cir. 2018)). In Ellicott, the plaintiff was hired as Director of Business Development and tasked with selling large-scale solar installations to commercial clients. Ellicott, 906 F. 3d at 166. The plaintiff's compensation plan stated that he would receive "40% of [the] profit margin on each sale and installation." Id. The First Circuit concluded that a "jury could reasonably conclude that" such commissions are covered under the Wage Act. Id. at 170. DeSantis v. Commonwealth Energy Sys., 68 Mass. App. Ct. 759, 761-63 (2007), also cited by Noreke, likewise involved "a sales representative" who was to earn "a commission equal to 20% of gross margins earned on sales." Id. But unlike the payments in Ellicot and DeSantis, the disputed compensation here was triggered not based upon sales or revenue earned by Noreke, but instead tied to the Newbury Division's Div NI. Okerman v. VA Software Corp., 69 Mass. App. Ct. 771, 772 (2007)) and Feygina v. Hallmark Health Sys., Inc., No. MICV2011-03449, 2013 WL 3776929, at *5 (Mass. Super. July 12, 2013), also cited by Noreke, are even further afield, as each involves revenue (not profit) sharing arrangements tied to the plaintiff's individual earnings.

**VI.   Conclusion**

For the foregoing reasons, the Court ALLOWS Defendants' motion for partial summary judgment as to Count I, the Wage Act Claim, D. 105.

**So Ordered.**

/s Denise J. Casper
United States District Judge